# ROBERT E COYLE FEDERAL COURTHOUSE EASTERN CALIFORNIA
## 2500 TULARE STREET ROOM 1501 FRESNO CALIFORNIA 93701

**FILED**

Ronald and Sadie Osburn, pro se, qui tam

USAG Michael Barr, **PLAINTIFFS**

v.

Countrywide Home Loans, dba America's
Wholesale Lender, Bank of America
Corporation, Recontrust, N.A. Home Loan
Center, dba Lending Tree Loans T D Service
Center, IndyMac Bank FSB, CTC Real Estate
Services, IndyMac Bank N.A., One West
FSB, CIT Group, TransNation Title Service
Company, HSBC Mortgage Corporation
(USA) HSBC Bank USA, N.A. Deutsche
Bank Trust Corporation - Americas Ocwen,
Western Progressive, llc John Does (1-10)
**DEFENDANTS**

FEB 2 1 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

1 9 CV   0 0 2 46 DAD SAB

FDC#_____

Complaint for Rescission, Fraud

and Intentional Infliction of

Emotional Distress

**Racketeering Influenced Corrupt Organization Noted**

**Jury Trial Demanded**

Ronald and Sadie Osburn, pro se
4523 West Evergreen Court
Visalia California 93277
559-802-5119
vdscrossbreezescreens@gmail.com

# CERTIFICATE OF INTERESTED PERSONS

The undersigned affiant certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification and recusal.

1. UNITED STATES OF AMERICA - CONSUMER FINANCIAL PROTECTION BUREAU

2. Ronald and Sadie Osburn, PLAINTIFFS,

3. Current or past mortgagees COUNTRYWIDE HOME LOANS, dba AMERICA'S WHOLESALE LENDER, DEFENDANTS;

4. BANK OF AMERICA CORPORATION, DEFENDANTS,

5. RECONTRUST, N.A., DEFENDANT,

6. HOME LOAN CENTER, dba LENDING TREE LOANS, DEFENDANT,

7. T D SERVICE CENTER, DEFENDANT,

8. INDY MAC BANK FSB, DEFENDANT,

9. CTC REAL ESTATE SERVICES, DEFENDANT,

10. INDY MAC BANK, N.A., DEFENDANT,

11. ONE WEST FSB, DEFENDANT,

12. CIT GROUP, DEFENDANT,

13. TRANSNATION TITLE SERVICE COMPANY, DEFENDANT,

14. HSBC MORTGAGE COMPANY, DEFENDANT,

15. HSBC BANK, (USA) N. A., DEFENDANTS,

17. DBTC-AMERICAS, DEFENDANTS,

14. OCWEN, DEFENDANTS,

15. WESTERN PROGRESSIVE LLC, DEFENDANTS,

-If you make your living loaning money at interest, or in real estate speculation and trading, 'flipping houses,' or are now bankrupt, homeless, or economically diminished by such actions of others, you may have strongly held personal opinions that should prompt your recusal from this case.

-If you are currently a class member under the administrative oversight of Joseph A. Smith, mortgagesettlementoversight.com, due to a past association with Bank of America, JP Morgan/Chase, Citibank, Wells Fargo, Ocwen, Ally GMC, One West, Greentree,  Indy Mac Bank FSB, HSBC, SunTrust, DeutscheBank, Credit Suisse, or their subsidiaries, you should consider recusal from this case.

-If you are a managing officer or stockholder of a corporation under current ongoing investigation by SEC or US DOJ, or an investigator or enforcement agent involved in such current ongoing investigation, you should consider recusal from this case.

-If you work in law enforcement, or as a principal or partner in a law practice which serves an inordinate concentration of either plaintiffs or defendants, you should consider recusal from this case.

/s/Ronald Osburn and Sadie Osburn,
a married couple, pro se - PLAINTIFFS

/s/USAG Michael Barr

DATE  15 FEBRUARY 2019

[newpage]

Comes now Ronald and Sadie Osburn, a married couple, JOINT PLAINTIFFS, who are the victim of wrongful foreclosure, assault, home invasion, and unlawful business practices of all identified debt collector defendants and their unknown agents, JOHN DOE OR JANE ROE.

**Jurisdiction and Venue**

1. Diversity - All parties reside in different states.

2. Federal Questions  - 14th Amendment to US Constitution of 1868, USC Title 12 Banks and Banking (most current), Financial Institution Regulation, Reform, and Enforcement Act of 1989, Fair Debt Collection Practices Act of 2012, RESPA-TILA/Regulation X of 2015.

3. The events which form the basis of this complaint occurred in Montgomery County, State of Maryland and in foreign states and countries within the jurisdiction of the court.

4. The material claims exceed $75,000.

[newpage]

**PARTIES**

5. **PLAINTIFF** Ronald and Sadie Osburn possess and reside at subject property 4523 West Evergreen Court, Visalia, California 93277

6. **DEFENDANT, Countrywide Home Loans** (CHL), dba America's Wholesale Lender. The court is noticed that America's Wholesale Lender, at the initiation of this matter, was not a corporation, was not a federal savings bank, and was not authorized in any way to conduct legal business in the United States of America. We will call Christopher Warren, currently in custody of federal marshals at Folsom State Prison, to further expound on this matter. As CHL is dissolved, they are named as defendants strictly for informational purposes, in their relation to the responsibility and liability assumed by their legal heirs and successors.

7. **DEFENDANT, BANK OF AMERICA CORPORATION,** doing business at Charlotte, NC, acquired the assets and liabilities of CHL, keeping some assets and disposing of others through Recontrust. BAC was signatory to the Consent Order and Private Civil Penalty excerpted below, and many others-

"W H E R E A S , A rticle V II o f the 2011 O C C C onsent O rder required the B ank, am ong other
things, to retain an in dependent consultant to conduct an in dependent review o f certain residential m ortgage loan foreclosure actions or proceedings fo r loans serviced by the B ank, the purposes o f w h ich w ere set forth in A rticle V II o f the 2011 O C C C onsent O rder (the "In d ependent F oreclosure R eview " );
W H E R E A S , B A C has tak en steps to ensure th at the B an k com plies w ith its obligations to conduct the In dependent F oreclosure R eview ;
W H E R E A S , in the interest o f providing the greatest ben efit to borrow ers potentially affected by the practices at the B ank addressed in the 2011 O C C C onsent O rder in a m ore tim ely m anner than w ould have occurred u n d er the Independent F oreclosure R eview , the B oard o f G overnors and the O C C , w ithin th eir respective jurisdictions, B A C , the B ank, and several other financial institutions w ith m ortgage loan servicing operations have agreed to am end their respective 2011 C onsent O rders;" -FRS -#11-029-B-HC

FILE COPY      FILE COPY      FILE COPY

This matter represents another enforcement action by the Plaintiffs in the long line of continuing activity and violations in this sphere.

**8. DEFENDANT RECONTRUST, N.A.,** embraced the role of evaluating and dismembering all assets or purported assets of Countrywide Home Loans after their purchase of CHL above.  Recontrust has no corporate officers or corporate structure, and can be served at  OCCUPANT,1800 Tapo Canyon Road, Simi Valley, CA 93063  A sample of their purpose and activity as a RICO actor is listed below-

"FULL RECONVEYANCE
WHEREAS, John Smith, is the Trustor, Bank of America, N.A, is the current Beneficiary and ReconTrust Company is the current Trustee under that certain Deed of Trust dated XX/XX/20XX, and recorded on XX/XX/20XX as Instrument or Document No. XXXXXXXXXXX, in book, page, of the Official Records of the County of Los Angeles County, State of California;
WHEREAS, the Trustee does hereby reconvey, without warranty, to the person or persons legally entitled thereto, the estate now held by the Trustee under said Deed of Trust.
Dated 1/17/2013
Trustee: ReconTrust Company
By: Maria Fregin, Assistant Vice President

State of Arizona, County of Maricopa" -excerpted from a typical fraudulent transaction detailing the dismemberment of BAC securities to investors and debt collectors.

FILE COPY      FILE COPY      FILE COPY

7. **DEFENDANT HOME LOAN CENTER, dba LENDING TREE LOANS**, is a duly licensed mortgage broker and lead generator at 11115 Rushmore Drive, Charlotte, NC 28277

8. **DEFENDANT T D SERVICE CENTER,** acted as trustee to Home Loan Center above.  T D Service Company no longer exists and is noted here only for property transfer sequence notes.  First American Mortgage Solutions has acquired the shreds of TD since 10 October 2016.

9. **DEFENDANT INDY MAC BANK FSB**, did business at 155 North Lake Avenue, Pasadena, CA91101 as a Federal Savings Bank until it's failure and dissolution in 6 June 2008 and is noted here only for property transfer sequence notes.

10. **DEFENDANT CTC REAL ESTATE SERVICES**  acted as trustee of Indy Mac Bank FSB.

12. **DEFENDANT INDY MAC BANK, N.A.,** does business as (14) below;

13. **DEFENDANT ONE WEST FSB**, purchased the remaining assets the failed of IndyMac FSB on 20 March 2009.  OneWest Bank, F.S.B entered into a Stipulation and Consent to Issuance of a Consent Order onApril 13, 2011.

"The Office of Thrift Supervision (OTS), as part of an interagency horizontal review of major residential mortgage servi cers, has conducted an examination of the residential real estate mortgage foreclosure processes of OneWest  Bank, FSB, Pasadena, California (Association).

FILE COPY      FILE COPY      FILE COPY

The OTS has identified certain deficiencies and unsafe or unsound practices in the Association's residential mortgage servicing and in the Association's initiation and handling of foreclosure proceedings. The OTS has informed the Association of the findings resulting from the examination. -OTS #11-011

14. **DEFENDANT CIT GROUP**, Founded in 1908, CIT (NYSE: CIT) is a financial holding company with approximately $50 billion in assets as of June 30, 2018. Its principal bank subsidiary, CIT Bank, N.A., (Member FDIC, Equal Housing Lender) has approximately $30 billion of deposits and more than $40 billion of assets. CIT provides financing, leasing, and advisory services principally to middle-market companies and small businesses across a wide variety of industries. It also offers products and services to consumers through its Internet bank franchise and a network of retail branches in Southern California, operating as OneWest Bank, a dvision of CIT Bank, N.A.

15. **DEFENDANT TRANSNATION TITLE SERVICE COMPANY**, 921 Division Ave, Grand Rapids MI 49503.

16. **DEFENDANT HSBC Mortgage Corporation** is/was a subsidiary of HSBC Bank USA, NA and is no longer active. We include them here for purposes of continuity.

17. **DEFENDANT HSBC Bank USA N.A.** offices at 2929 Walden Avenue Depew, NY 14043. HSBC Bank USA, and is a foreign agent of HSBC Corporation, London, England. HSBC is signatory to the consent judgment of 2/2/2016 USA v. HSBC Bank USA #16-0199, including a civil money penalty of $100,000,000.

"WHEREAS, Plaintiffs, the United States of America and the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, Wyoming, the Commonwealths of Kentucky, Massachusetts, Pennsylvania and Virginia, and the District of Columbia (collectively, the States, Commonwealths, and the District of Columbia are referred to as the "States") filed their complaint on February 5, 2016, alleging that HSBC North America Holdings Inc. ("HNAH"), HSBC Bank USA, N.A. ("HBUS"), HSBC Finance Corporation ("HBIO"), and HSBC Mortgage Services Inc. ("HMSI") (collectively, "Defendants") violated, among other laws, the Unfair and Deceptive Acts and Practices laws of the Plaintiff States, theFalse Claims Act, the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, and the Bankruptcy Code and Federal Rules of Bankruptcy Procedure;"

- USA v. HSBC #16-0199

18. **DEFENDANT Deutsche Bank Trust Company Americas** offices at 1781 East St Andrews Place, Santa Ana, CA 92705, and acted as trustee in behalf of RALI MBS CERTIFICATES 2006-QS17 until their dissolution.  DBTC-AMERICAS is the foreign agent of Deutsch Bank in Frankfurt, Germany. Deutsche Bank of Frankfort Germany is signatory to the Enforcement Actions of the Federal Reserve System v. Deutsche Bank #17-009-B-FB, 17-009-B-FBR, 17-009-B-HC, 17-009-B-SMB, 17-009-CMP-FB, 17-009-CMP-FBR, 17-009-CMP-HC, 17-009-CMP-SMB, including provision of Civil Money Penalty of #3.1BN to the SecTreas in currently unallocated funds.

FILE COPY      FILE COPY      FILE COPY

**19. DEFENDANT OCWEN**, 1661 Worthington Road, Ste 100, West Palm Beach, FL 33409-6493 was the first financial institution to enter a consent judgment with Eric Holder's DOJ under FIRREA 1989 in 2014, Case 1:13-cv-02025-RMC Document 12 Filed 02/26/14 Page 1 of 65, and is also the first financial institution to be indicted criminally under USA v. Ocwen FDC Southern Florida #9:17-cv-80495  I am limited to 10,000 words in this complaint so these are my favorite Ocwen charges from their 93-page criminal indictment-

20. "My Favorite Ocwen Charges

"As of 2014, Ocwen had also failed to verify whether the prior servicers' corporate advances or fees for servicing-related expenses—such as attorneys' fees, property inspection fees, property preservation fees, force-placed insurance charges, and foreclosure-related expenses—were valid and actually owed by borrowers. In many instances, Ocwen has charged borrowers for these charges and fees, even though neither Ocwen nor the prior servicer had invoices or other documents to support these charges and fees, and even though Ocwen was receiving disputes from borrowers claiming that these charges or fees were not owed."

"First, with respect to Ocwen's data management, REALServicing requires the use of more than 10,000 comment codes and flags. Yet, Ocwen lacks a complete data dictionary defining its comment codes, flags, and data fields. As a result, Ocwen personnel do not share a common understanding of what these comment codes or flags mean or how Ocwen personnel should use them."

"Ocwen's use of inaccurate and incomplete information resulting from its boarding of inaccurate and incomplete information into REALServicing, REALServicing's deficiencies, and Ocwen's error-prone manual processes has caused or is likely to have caused borrowers substantial harm, and resulted in

Ocwen communicating, orally and in writing, information to borrowers that it knew or had a reason to know was inaccurate."

"Ocwen's errors in crediting borrower payments and use of inaccurate payment information have significantly harmed borrowers. Ocwen has charged borrowers improper late fees; reported inaccurate, negative payment information to credit reporting agencies; subjected borrowers to collection calls based on inaccurate information; and wrongly threatened borrowers with foreclosure. This conduct has harmed borrowers financially and caused borrower frustration and emotional distress."

"From April 2015 to April 2016 alone, Ocwen received complaints from more than 68,000 borrowers related to its processing of payments. Ocwen determined it made numerous errors in the following categories: "Payments Not Applied Correctly"; "Funds Not Applied Correctly"; "Reversal Requests"; "Late and NSF Fees"; "Payment Missing –Not Applied to Account"; "Chargeback Issue - Borrower Disputes ChargedBack Item"; "Fee Assessed Improperly"; "Payment Not Processed Timely"; "ACHDrafted Incorrectly (Incorrect Date, Multiple Drafts, etc.)"; "Payoff Overage"; "ACHPayment – Chargeback"; and "Incorrect Data in the Account Statement."

"Fifth, as a result of Ocwen's above failures, Ocwen has communicated, orally and in writing, inaccurate information to borrowers about escrow amounts, reinstatement amounts, and payoff amounts. These representations are material to borrowers managing their mortgages and are likely to mislead borrowers acting reasonably under the circumstances,"

"Between January 2014 and mid-2015, Ocwen failed to implement policies and procedures that were reasonably designed to meet the objective of Ocwen properly handling accounts for successors in interest to a deceased borrower ("successors"), particularly when successors were applying for loss mitigation assistance. As a result, Ocwen failed to properly recognize individuals as successors, denied loss

mitigation assistance to, and, in some instances, ultimately conducted foreclosure sales upon the loans of successors who may have been eligible for a loan modification or other loss mitigation options."

"For example, one potential successor complained that Ocwen had provided her with misinformation about the requirements for receiving a loan modification for her deceased mother-in-law's property. According to the potential successor, when she contacted Ocwen to inform it that her mother-in-law had passed away and that she and her husband wanted to request loss mitigation assistance to keep the property, Ocwen told her that she and her husband would not need to assume the mortgage.According to the potential successor, Ocwen later informed her—after she had made all required payments under a trial modification—that if she wanted to receive a permanent modification, she and her husband would have to assume the mortgage. The potential successor also complained that Ocwen had wrongfully charged foreclosure fees to the account, even though Ocwen records showed it had placed a foreclosure hold on the account. The potential successor complained to Ocwen, which directed the potential successor to its foreclosure firm, to explain the foreclosure fees. When the potential successor contacted Ocwen's foreclosure firm about the foreclosure fees, however, she reports that the firm told her that it had not done any work because the foreclosure was on hold."

"Ocwen's errors at every loan servicing stage have made it even more important that the company adequately investigate and respond to borrower complaints and notices of errors. These functions can act as a "safety net" to catch borrowers before they are further harmed by a servicer's unlawful conduct. Here, too, Ocwen has failed borrowers. Since April 2015, Ocwen has received more than 580,000 complaints and written notices of error from more than 300,000 different borrowers."

And my favorite of favorites - 'Call any vegetable...call me by name...call me five times in nine days...and maybe I will respond to you...'

FILE COPY      FILE COPY      FILE COPY

"In April 2015, Ocwen implemented new policies and procedures to address the difficulty its call center personnel had in recognizing and escalating borrower complaints. These policies and procedures, however, were not reasonably designed to handle consumer complaints. For example, instead of requiring Ocwen to identify a complaint the first time a borrower calls in, the new policies and procedures place the burden on the borrower to complain multiple times–at least five times in nine days – before Ocwen will automatically escalate their complaint for resolution to an Escalation Relationship Manager."

"Ocwen has lacked a systematic process to track and analyze errors it learns of through borrower complaints or NOEs to determine whether other borrowers may have been harmed by the same errors. As a result, Ocwen has typically only corrected errors or provided remediation to those borrowers who have complained (assuming Ocwen recognizes the call as an actual complaint, investigates, and/or makes a correction) or submitted an NOE, but generally has not corrected the same or similar errors for other borrowers who did not complain."

-FDC Southern Florida 9:17-cv-80495

Nice Work, CFPB!

**21. DEFENDANT WESTERN PROGRESSIVE LLC,**
Western Progressive and Power Default, Altisource's wholly owned trustee subsidiary, processes residential non-judicial foreclosures in California, Nevada, Arizona and Texas. We leverage best-in-class software, processes, and decades of industry experience to deliver excellent service while complying with statutory time frames for filing and notification. Our foreclosure services include:
- 24-hour client service
- First action within 24 hours of receipt of completed declaration
- Attorney referrals for bankruptcy and eviction
- Automated work-flow / paperless environment
- System integration to Lenders and title companies

FILE COPY      FILE COPY      FILE COPY

- Robust internal quality assurance and Six Sigma methodologies
- High-caliber associates via stringent hiring criteria and superior training practices
- Industry knowledge / United Trustee Association Member / Certified Trustee Sale Officer staff

For more information on our trustee services and to learn how Western Progressive can help improve your foreclosure process, please contact **Trustee.Services@Altisource.com**   @ 30 Corporate Park, Ste 450, Irvine, CA 92606

FILE COPY     FILE COPY     FILE COPY

[newpage]

## STATEMENT OF FACTS -para 22+-

R.D.
21 Feb 2019

22. This begins our Complaint of ~~31 March 2018~~. A substantial amount of material exhibits have been submitted as Electronically Stored Information, lodged with the clerk, and served to all counterparties, Exhibits P1-xxx through P200-xxx.  This material is far too voluminous to print.  An updated CD is submitted with this First Complaint, and a list of Exhibits (through P200-xxx).  These Exhibits yet need to be reviewed by all parties and either identified as stipulations, or presented to the jury as material differences.  As a RICO action, we believe this is characteristic of these matters.  FIRREA 1989 requires USAG to prosecute both civil and criminal enforcement actions v. financial institutions.  This matter is a private civil complaint only.  We will refer criminal aspects to law enforcement.  All consent judgments so far are under FIRREA 1989, i.e., Eric Holder, Loretta Lynch, and Jeff Sessions.  Debra Bonilla-Mead in this case is acting qui tam USAG Jeff Sessions, who is indisposed.  For clarity and brevity we will note these plaintiff exhibits as we go through the complaint, for easy reference to the expanded material in the plaintiff exhibits.  Two RICO actions of this sort have preceded us on record.

21. Debra states her claim to proper standing and cites relevant Plaintiff Exhibits:

a) Reference case P105-uscourts-txsd-4_12-cv-02676-5 BellivAllied; a qui tam case, Peter Belli v. Allied;  $92M award by jury raised to $234M on appeal.  From the settlement of 7 September 2016, document 309 (to save the relation of five years of litigation from inception to settlement)-

"Whereas, in[sic] or about May 2011, Relator Peter Belli (Relator), a former branch manager for Allied capital, now deceased, filed a qui tam action against Allied Capital in the United States District Court for the State of Massachusetts… [Venue moved]" -FDC Southern Texas #4:12-cv-02676 Belli v. Allied et al.

FILE COPY       FILE COPY       FILE COPY

b) Reference case P68-mt-settlement-agreement.pdf

On March 19, 2013, Keisha Kelschenbach filed a qui tam action in the United States District Court for the District of Western New York, captioned United States ex rel. Kelschenbach v. M&T Bank Corp (W.D.N.Y) 13-cv-280A, pursuant to the qui tam provision of the False Claims Act, 31 U.S.C. § 3730(b) (the "Kelschenbach  Civil Action"). From settlement of $64,000,000 + fees of 9 May 2016 (again for brevity and clarity)-

"SETTLEMENT AGREEMENT

"This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Department of Housing and Urban Development ("HUD") (collectively the "United States"), Manufacturers and Traders Trust Company a/k/a M&T Bank, successor by merger to M&T Mortgage Corporation ("M&T"), and Keisha Kelschenbach ("Relator") (hereafter collectively referred to as "the Parties"), through their authorized representatives." " -FDC Western New York #13-cv-280A Kelschenbach v. Allied

-------------------

Both of these federal cases have been decided through this process. Exhibits have been presented to the court as electronically stored information and served on defendants directly, as an appendix to our complaint.

23.  For the sake of brevity and clarity, we may have glossed over in our complaint the RICO aspects of our action and it may not be well understood by our counterparties, as it is also not often encountered through the necessary qui tam action. The 500+ page RICO Manual for Federal Prosecutors of 2007 is also included in our Exhibits as P120-2007-Civil-RICO.pdf. I've constructed a brief self-paced study guide of the major features of such matters as we are considering here, P123-Rico TF Test.pdf I include it here.

FILE COPY     FILE COPY     FILE COPY

**Criminal and Civil RICO Manual of 2007 - USDOJ**

Self Appraisal Test - Circle T for TRUE or F for FALSE

T     F     To obtain civil equitable relief under 18 U.S.C. § 1964(a), the United States must prove by a preponderance of the evidence that: (1) a defendant committed or intended to commit a RICO violation by establishing the same elements as in a criminal RICO case, except that criminal intent is not required; and (2) that there is a reasonable likelihood that the defendant will commit a violation in the future.

T     F     Civil RICO, 18 U.S.C. § 1964(a), authorizes potentially intrusive remedies, including injunctive relief, reasonable restrictions on defendants' future activities, disgorgement of unlawful proceeds, divestiture, dissolution, reorganization, removal from positions in an entity, and appointment of court officers to administer and supervise the affairs and operations of defendants' entities and to assist courts in monitoring compliance with courts' orders and in imposing sanctions for violations of courts' orders.

In addition, Government attorneys should consider the following factors, among others, in determining whether to bring a civil RICO lawsuit against an individual and/or a collective entity:

T     F     (1) the nature and seriousness of the predicate racketeering offenses;

T     F     (2) whether the predicate racketeering offenses were committed over a substantial period of time, and/or pose a threat of continuing unlawful activity;

T     F     (3) whether an organized crime group participated in any of the predicate racketeering offenses or exercised corrupt influence over any proposed enterprise, defendant or related entity;

T     F     (4) whether there is a reasonable likelihood that the defendant will commit unlawful activity in the future;

T     F     (5) the pervasiveness of wrongdoing within a collective entity that is a proposed defendant, including the complicity in, or condonation of, the wrongdoing by the collective entity's officers and management;

T     F     (6) the defendant's history of similar unlawful conduct, including prior criminal, civil or regulatory enforcement actions against it;

T     F     (7) whether the defendant has derived unlawful proceeds from his RICO violation that are subject to disgorgement;

T     F     (8) the defendant's timely and voluntary disclosure of wrongdoing and his/her or its willingness to cooperate with the authorities to eliminate corruption involving the defendant or related entities;

T     F     (9) the existence and adequacy of a collective entity's compliance program and other remedial actions;

T     F     (10) collateral consequences, including harm, if any, to innocent third parties, including a collective entity's shareholders, employees, or union members;

T     F     (11) whether and to what extent the sought remedies are likely to be effective; and

T     F     (12) the availability and adequacy of other remedies.

T     F     No civil RICO complaint shall be settled or dismissed, in whole or in part, without prior approval of OCRS.

T    F    Once a civil RICO complaint has been approved and filed, it is the duty of the Government's attorney handling the matter to submit to OCRS a copy of the complaint, including all attachments, bearing the seal of the clerk of the district court. In addition, the Government's attorney should send OCRS copies of the Government's filings for pre-trial motions and should keep OCRS informed of adverse decisions as noted above and legal problems that arise in the course of the case to enable OCRS to provide assistance and carry out its supervisory functions.

T    F    Article III, Section 2 of the United States Constitution provides, in relevant part, that A [t]he judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties Made, or which shall be made, under their Authority.  Equity is that portion of the law which was developed by the English and American courts of chancery to remedy defects in the common law.

T    F    However, commencing in 1845, states began to abandon their separate equity courts, and in 1938, federal courts adopted new Federal Rules of Civil Procedure for all civil matters, wherein a single form of civil action is provided for all civil suits.

T    F    Classification of a cause of action as to whether it seeks a remedy at law or in equity remains important for several reasons of general significance: (1) equitable remedies are generally enforceable by contempt while legal remedies are not; (2) generally, litigants do not have a right to a jury trial to obtain equitable relief, whereas in many cases a right to a jury trial attaches to the suits at law; and equitable relief is discretionary.

T    F    Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.

T   F   Moreover, the Supreme Court has pointedly ruled that where "the public interest is involved. . . those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake."

T   F   For example, in Brown v. Bd. of Educ., 349 U.S. 294, 300-01 (1955), the Supreme Court ruled that courts had very broad equitable powers to order structural changes in school systems to desegregate schools, including "ordering the immediate admission of plaintiffs to schools previously attended only by white children."

T   F   The district courts of the United States shall have jurisdiction to prevent and restrain violations of Section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future
activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

T   F   The Senate Report regarding RICO also quoted approvingly the Department of Justice's view that these equitable remedies would also seem to have a greater potential than that of the penal sanctions for actually removing the criminal figure from a particular organization and enjoining him from engaging in similar activity, and that these remedies are flexible, allowing of several alternate courses of action for dealing with a particular type of predatory activity, and they may also be effectively monitored by the court to insure that its decrees are not violated.

T    F    Both dissolution and divestiture serve to put "an end to the [unlawful] combination or conspiracy" and to "deprive . . . defendants of the benefits of their conspiracy."

SCORING KEY
Of course, all of these statements ae TRUE.  If you have other thoughts, then you might examine your errors and get with the program.


24. On 11 January 2005 Evert and Raquel Dixon sold this subject property at 4523 West Evergreen Court, Visalia California, Tulare County Parcel 119-580-010 to to Ron and Sadie Osburn, the new owners.

25. On 14 January 2005 America's Wholesale Lenders executed a Deed of Trust for $267,200 as security for the purcase, and a Deed of Trust, with a Notice of Default for $66,800.  America's Wholesale Lenders was a "letterhead corporation," having no corporate existence in America or California at the time.  America's Wholesale Lenders presented themselves to the public as a loan placement processor in the private securities market.  The trustee was CTC Real Estate Services.

26. On 14 January 2005 Evert and Raquel Dixon executed two Substitutions of Trustee and Full Reconveyance to ReconTrust, NA of their previously owned property.  The Trustee was ReconTrust NA.  ReconTrust NA was and is a "letterhead corporation" purporting itself as a fully owned subsidiary of Bank of America, having no outside corporate existence, business plan, personnel, offices, or equity of any kind.

27. On 29 November 2005 Ron and Sadie Osburn executed a Home Equity Line of Credit for $145,000 with Lending Tree, typically uncollaterized. The trustee was T.D. Service Company, no longer in existence.

28. On 13 December 2005 CTC Real Estate Services filed a Substitution of Trustee in Tulare County on the subject property, replacing ReconTrust with themselves. This cryptic document appears fraudulent on it's face.

29. On 18 March 2006 Ron and Sadie Osburn signed two Deed of Trust as joint tenants on the subject property with Indy Mac FSB for $348,400, and $87,100, both secured by the same subject property. The trustee was Transnation Title Insurance Company, who is no longer in business.

30. On 31 July 2008 Indy Mac Bank FSB ceased to exist. All assets and liabilities were quickly acquired by One West Bank.

31. On 28 April 2009 a Notice of Settlement Agreement was filed in Tulare County referencing the subject property between Ron and Sadie Osburn and Centex Homes.

32. On 13 April 2011 a consent judgment was recorded between USDOJ and One West bank detailing a wide range of dissolute accounting practices throughout the corporation. A substantial private civil penalty was posted to SecTreas for purposes of restitution and penalty.

33. On 20 June 2012 a notice of Substitution of Trustee pertaining to the subject property was filed in Tulare County naming MERS as replacement for Transnation Title Insurance Company. The notice appears fraudulent on its face.

34. On 1 August 2015 CIT Group acquires One West, with all assets and liabilities.

35. On 9 January 2017 a notice of Corporate Assignment of Deed of Trust from Indy Mac Bank FSB, pertaining to the subject property was filed in Tulare County naming DBNTC-Americas, as trustee for Indy Mac INDX Mortgage Loan Trust, Mortgage Pass-Through Certificates Series 2006-AR11 as replacement for MERS. The notice appears fraudulent on its face.

35b. Note criminal indictment of USA v. Paul Mangione FDC Eastern NY #17-5305. Paul was Vice President of DB at this time, charged with valuation and issuance of all DB RMBS securities outside USA.

35c. Note DB  FEDERAL RESERVE ENFORCEMENT ACTION 17-009-B-FB and 17-009-FB on 4/20/2017.

"WHEREAS, the Board of Governors has determined that, as of March 30, 2016, Deutsche Bank failed to establish a compliance program reasonably designed to ensure and monitor compliance with Volcker Rule requirements, and has determined:
A.  Significant gaps existed across key aspects of Deutsche Bank's Volcker Rule compliance program, including policies and procedures, management framework, and internal controls. These gaps, in turn, caused deficiencies in the scope of Deutsche Bank's independent testing efforts;
B.  Significant weaknesses existed in Deutsche Bank's demonstrable analyses showing that its proprietary trading is not to exceed the reasonably expected near term demands of clients, customers, or counterparties, required for permitted market-making activities, and Deutsche Bank did not subject trading desks' RENT-D methodologies to sufficient review or challenge by internal control groups;

FILE COPY      FILE COPY      FILE COPY

C. Deutsche Bank's metrics reporting and monitoring process suffered from weaknesses which, together with the absence of sufficient internal controls, limited the Bank'sability to adequately monitor trading activity to detect impermissible proprietary trades; and

D. As a result of these deficiencies, Deutsche Bank has not implemented a compliance program reasonably designed to ensure and monitor compliance with Volcker Rule requirements and had engaged in unsafe or unsound banking practices and violated provisions of the Volcker Rule;

WHEREAS, the Board of Governors expects Deutsche Bank to fully comply with the Volcker Rule requirements;..."

36. On 21 February 2017  a notice of Substitution of Trustee pertaining to the subject property was filed in Tulare County naming Western Progressive llc as replacement for Transnation Title Insurance Company. The notice appears fraudulent on its face

37.  On 23 June 2017 A Notice of Trustee's sale on the subject property was filed by Western Progressive llc.

38. We contend that all debt collection activities since that time of America's Wholesale Lenders are unlawful, unwarranted, extravagant, and designed for intimidation and offense.  Collateral rights to property have been extinguished since 2006.  Debra Bonilla-Mead has been subjected to Extreme and Intentional Infliction of Emotional Distress.

38a.   Scheduled SCOTUS Oral Argument of #17-1307 Obduskey v. McCarthy & Holthus is scheduled for 8 January 2019.  This jury has the opportunity to consider the same question today, in this matter.

"QUESTION PRESENTED

Congress passed the Fair Debt Collection Practice Act (FDCPA) to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. 1692(e). Under the FDCPA, the term "debt collector" is defined as "any person * * * who regularly collects or attempts to collect, di-

rectly or indirectly, debts owed or due * * * another." U.S.C. 1692a(6). This case presents a clear and entrenched conflict regarding whether the FDCPA applies in the foreclosure context. In the decision below, the Tenth Circuit, siding with the Ninth Circuit, held that non-judicial foreclosures are not covered by the FDCPA; in doing so, the panel acknowledged the issue has "divided the circuits," and it expressly rejected the "contrary position" of multiple

courts of appeals and state high courts. This holding was the sole basis of the decision below, and it arises on the precise fact-pattern that has generated extensive "confusion" and hundreds of conflicting decisions. This case is the perfect vehicle for resolving the widespread disagreement over this important issue."

39. [BANKRUPTCY FILING]

39a. Dona Beach Blvd Huntington Beach, CA 92647
UNITED STATES BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA
In re: DONA
Debtor / Case No. 8:17-bk Chapter 7
DEBTOR'S OBJECTION TO THE BANK OF PROOF OF CLAIM"
-Debtor's Objection to Creditor's "Proof of Claim" under: 851. False Claims 18 U.S.C.$ 152(4)
And now comes Debtor, Dona. * with her objection to The Bank of "Proof of Claim" filed on September 29, 2017, titled "Opposition to Motion to Avoid Lien Under 11 U.S.C. § 522(f) (Real Property)," wherein the proof of claim is defective and should be withdrawn by counsel for The Bank of New York Mellon, Christopher M. McDermott, Aldridge, Pite, LLP, for violation of 18 U.S.C. &

152(4) specifically, filing false and fictitious records into the Federal court records. The fraudulent, forged and potentially altered documents were used in order to unlawfully conduct a sale of the estate real property of Debtor on record commonly referred to as 3891 Finisterre Drive, Huntington Beach, California 92649. LEGAL DESCRIPTION LOT OF TRACT IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOX - , PAGES 14, 15, 16, 17, 18, 19, AND 20 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBONS, BELOWA DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD

False Claims—18 U.S.C. § 152(4) (USAM Criminal Resource Manual at 851)

Subsection (4) of Section 152 sets out the offense of filing a false bankruptcy claim. A "claim" is a document filed in a bankruptcy proceeding by a creditor of the debtor. It is sometimes also called a "proof of claim." For the purposes of this section the nature of the claim is immaterial-- i.e., the claim can be secured or unsecured, liquidated or unliquidated, disputed or undisputed. A "false" claim is one that is known by the creditor to be factually untrue at the time the claim is filed.

Subsection (4) provides:

A person who...knowingly and fraudulently presents any false claim for proof against the estate of a debtor, or uses any such claim in any case under title 11, in a personal capacity or as or through an agent, proxy, or attorney,...shall be fined..., imprisoned..., or both.

The elements of a false claim violation are:

that bankruptcy proceedings had been commenced; that defendant presented or caused to be presented a proof of claim in the bankruptcy; that the proof of claim was false as to a material matter; and that the defendant knew the proof of claim was false and acted knowingly and fraudulently,

United States v. Overmyer, 867 F.2d 937,949 (6th Cir.), cert. denied, 493 U.S. 813 (1989).

FILE COPY     FILE COPY     FILE COPY

A claim can be asserted by a creditor whether or not it is reduced to judgment, whether the claim is liquidated, unliquidated, fixed, contingent, mature, unmatured, disputed, undisputed, legal, equitable, secured or unsecured. United States v. Connery, 867 F.2d 929, 934 (reh'g denied) (6th Cir. 1989), appeal after remand 911 F.2d 734 (1990).

Since the falsity of a claim, in most cases, is obvious, the key issue frequently becomes what was the defendant's state of mind at the time of the filing of the claim. Good faith is a complete defense to this charge. The filing of a false claim is not a crime where there was a good faith belief in its accuracy. United States v. Connery, 867 F.2d 929, 934 (reh'g denied) (6th Cir. 1989), appeal after remand 911 F.2d 734 (1990).

A proof of claim is not false merely because it may be inaccurate or erroneous in any or all respects. The claim may be asserted by a creditor in good faith even though the moneys being sought are thereafter successfully disputed by the debtor or disallowed by the Bankruptcy Court. Instead, a proof of claim is false if the statements contained therein are intentionally inaccurate and submitted without any good faith basis for the claim and are not the result of some mistake or clerical error or inadvertent omission.

40. Ron and Sadie Osburn filed a federal bankruptcy proceeding in Eastern District of California Fresno Case#18-14099. All property was turned over to the Bankruptcy Trustee for disposition. On proper notice, Ocwen filed a Motion for Release of Automatic Stay to seize and sell this subject property. Ocwen failed to file satisfactory Proof of Claim. This debt was cancelled and Ron and Sadie were released by federal order from this obligation.

41. "Debtor opposes the motion for relief from the automatic stay simply because the Movant does not have standing. Debtor contests the motion because Movant is not the Real Party in Interest, Movant does not have standing, Movant has acquired a void and fraudulently based Trustee's Deed, Movant relies on assignments (all)

made contrary to law, and because Movant's non-judicial foreclosure action is illegal.

First, on October 22, 2018, Debtor listed the movant and its servicer, Ocwen Loan Servicing, as non-priority unsecured debts in his Schedules. Furthermore, the debts were listed and discharged on April 20, 2013 in Bankruptcy Case #09-15035 filed in this court.

Second, Movant has failed to file a Proof of Claim, 410 and 410A.

Certain amendments to the Federal Rules of Bankruptcy Procedure, which became effective on December 1, 2017, impose affirmative obligations on secured creditors to protect the right to distribution in a bankruptcy case. Specifically, Rule 3002(a) now requires a secured creditor to file a proof of claim in order to gain allowance for a secured claim." -Federal Bankruptcy 18-4099, Order of the Trustee

42.  The bankruptcy proceeding is closed and this debt is discharged by the Federal Trustee.  Once again, like a rattlesnake with it's head removed, Ocwen is ritualistically attempting to seize and sell this property.

43.  In the intervening time, Ocwen is indicted with criminal charges in Southern Florida, Case#XXXX, in progress today.

44. In the intervening time, Dennis Obduskey has appeared for oral argument before the United States Supreme Court #17-307, Dennis Obduskey v. McCarthy and Holthus to consider the federal question 'Do all laws in America apply to all persons in America, or are securities dealers of such inherent value and of such essential purpose to society and of such complex skills that their daily toil is exempt from regulation or attack?'  The Supreme Court is expected to rule Real Soon Now.  We are presenting this same question to this jury, right here today, concerning this subject property.

[newpage]
**MATERIAL DAMAGES -para 45+**

45.   **$500,000.00. x 3 = $1,500,000**   Rescission of all payments on initial purchase and unpaid principal balance, or unrestricted title to property to be recorded in Tulare County records by Ocwen.

46.   **$250,000 x 3 = $750,000**   Refund of all casualties incurred, replacements or permanent improvement initiation of property through this date (x3).

47.   **ONE MILLION DOLLARS**   Compensation for Intentional Infliction of Emotional distress by named RICO co-conspirators.

48.   **FIVE MILLION DOLLARS** Punitive damages assessed as motivation to discontinue such futire activities.

49.   All usual customary and reasonable expenses of this action.

[newpage]
**JURY TRIAL DEMAND -para 50**

**50. THOU SHALT NOT STEAL**

is one of the strictures in the Decalogue, and actually also emphasized in Blackstone's Commentaries and Holmes' Common Law as foundational principles of property law in America.

We continue to emphasize the prohibition in America (1783), from the Fourteenth Amendment to the Constitution (1868), FIRREA 1989, FDCPA 2012, RESPA/ TILA 2015, Regulation X/Y, and literally mountains of case law both in support or opposition in federal courts and in our 57 states and territories.  No clear guidance has emerged.

The issue is currently under consideration at SCOTUS in the matter of Obduskey v. McCarthy & Holthus, #17-1307, simultaneously with this court, and has been argued, absent RBG, on 7 January 2019.  The Supreme Court has not issued their decision at this writing.

We'd like to voir dire the potential jury members in this matter as to under what conditions such a practice may be tolerated.

A YES or NO answer is sufficient.

YES   NO    If it is normal business practice.

YES   NO    If it is privileged competitive information that may not be disclosed.

YES   NO    If it is of benefit to the greater good.

FILE COPY        FILE COPY        FILE COPY

YES   NO    If everyone wets their beak a little.

YES   NO    If it is not over state lines.

YES   NO    If it is a bonus over and above normal earned compensation.

YES   NO    If it is properly disclosed to the patsy.

YES   NO    If it is night.

YES   NO    If the owner is careless about her person.

YES   NO    If the new owner is more deserving of the benefit.

YES   NO    If there are collateral consequences.

YES   NO    If it is just among Mormon people.

**SCORING**

For any YES answer, the juror is excused.

[newpage]
## TEMPORARY RESTRAINING ORDER


51. See Attachment McGinniss Motion

File one hour after summons is issued.

## CLOSING STATEMENT -para 90+

52. I've been asked 'Who the Heck Are You?'

America is a Great Place.  The Three Great Things about America are Life, Liberty, and Property.  Other countries look up at America, up on the hill, shining brightly, and it stirs their souls.  They immediately start figuring out how they can get some money from us.  The Residential Mortgage Backed Security has become a favorite.

Securities are widely traded in the investment world.  They are generally thought of as porkbellies, or barrels of oil, or feeder cattle, or shares of Boeing stock. A piece of Boeing stock of course does not give you the keys to a Boeing aircraft of your own.  One can buy a million barrels of September oil, and sell it in December, and make a boatload of money.  You don't even have to wait for December!  People always need oil.  You can get them over a barrel, and make one million times $3.25 or so, and you don't even have to drill it, pump it, transport it, or refine it.  That's the nasty part you leave to others.

In Ruritania, the King owns all the property.  In America, the peasants can own property, and a peasant woman can be King, in her own home.  The RMBS, properly structured, enables the peasant woman to buy a home in 2007, and you the investor can make money until 2037, and you don't have to deal with the peasants.  They can fix their own refrigerator, or buy a new one if they want one.

FILE COPY     FILE COPY     FILE COPY

Securities do have a few risks, from AAAA+ to Cccc-, or worthless, but we don't talk about the worthless ones.  They're too scary.  A thousand porkbellies are eighty thousand pounds of bacon.  Some of the discrete porkbellies are only fifty pounds, but they're offset by the hundred pounders.  The processor gives you eighty thousand pounds of bacon.  The processor keeps the extra bits, and makes chitlins.

A billion dollars of Residential Mortgage Backed Securities, with discrete mortgages of $183,000 each is 5,464 Residences, some bigger, some smaller.  If you're an investor, you'd probably like a little overcollateralization, maybe 5-8%, or 400 extra residences.  If you're packaging the investment, you're going to need a haircut of 20% or so, say 1,200 more residences.  That means you'll need about 8,064 residences to fill the tranches so everyone is comfortable about the risk.  That comes out to $1,475,712 for book value, or $475,212 earned at issue day [very conservatively speaking]. Of course, you're dealing with Other People's Money, so do you really care?  I'll be Gone, You'll be Gone, it's Somebody Else's Problem.

I'm Somebody From CALIFORNIA.  I do not tolerate money-changers in my father's country.

/s/Ronald Osburn and Sadie Osburn,
a married couple, pro se - PLAINTIFFS

/s/USAG Michael Barr

DATE <u>15  February 2019</u>
33 pages / 8,248 words
prepared in iWork

FILE COPY      FILE COPY      FILE COPY

# EXHIBITS

This will all be submitted as Plaintiff Exhibits Electronically Stored Information. It is too much paper to print.

Affidavit of Ron and Sadie Osburn

SCOTUS #17-1307 Obduskey v. Mccarthy & Holthus, scheduled for current session

McGinniss v. AHMSI, et al., Proceedings

McCrae v. PHH, FDC Western Texas 1:14-cv-733-LY-ML, 11 USCA #14,51224, SCOTUS, writ denied

Consent Orders  BAC, Indy Mac, One West

Ocwen Criminal Indictment

CFPB and 49 SAG, excluding Oklahoma, v. Ocwen Consent Order 16 December 2013

DBTC Consent Judgment through Federal Reserve

LVNV v. Finch, Maryland Supreme Court #46, 2019

...and others as listed

[newpage]

**PROOF OF SERVICE**

I have served this Complaint to the listed parties below by USPS / email
on this date.

Countrywide Home Loans, dba America's Wholesale Lender, VOID – OUT OF
BUSINESS

Bank of America Corporation, Charlotte, NC

Recontrust, N.A.  @OCCUPANT,1800 Tapo Canyon Road, Simi Valley, CA 93063

Home Loan Center,  11115 Rushmore Drive, Charlotte, NC 28277

T D Service Center, VOID - OUT OF BUSINESS

IndyMac Bank FSB,  VOID – OUT OF BUSINESS

CTC Real Estate Services, VOID - OUT OF BUSINESS

One West BANK, a division of

CIT Group, operating as OneWest Bank, a division of CIT Bank, N.A.

TransNation Title Service Company, 921 Division Ave, Grand Rapids MI 49503.

HSBC Mortgage Corporation (USA)

HSBC Bank USA, N.A. 452 Fifth Avenue, New York, NY, 10018, foreign agent of
HSBC Corporation, London, England

Deutsche Bank Trust Corporation - Americas, 1781 East St Andrews Place, Santa
Ana, CA 92705, foreign agent of Deutsche Bank, Frankfort, Germany

Ocwen Loan Servicing, llc, 1661 Worthington Road, Ste 100, West Palm Beach,
FL 33409-6493

FILE COPY      FILE COPY      FILE COPY

Western Progressive, llc  dba Altisource, 30 Corporate Park, Ste 450, Irvine, CA 92606


/s/Ronald Osburn and Sadie Osburn,
a married couple, pro se - PLAINTIFFS


/s/USAG Michael Barr

R.O.

21

DATE 15 February 2019